May it please the Court, Counsel, I am Lisa Hay of the Federal Defender's Office, representing the Petitioner Michael Jenkins. With the Court's permission, I'd like to try to reserve a few minutes for rebuttal, if needed. This case involves the Oregon Poll Board's violation of the ex post facto clause of the U.S. Constitution. In short, the Board applied a 1981 statute to defer Mr. Jenkins' release on parole, even though his crimes occurred in 1979. In an earlier statute How is the second statute more harmful to your client? In order to keep him, they had to find two things instead of one? Well, Your Honor, it's true that under the 1981 statute, they amended it to require an additional finding, that the defendant be dangerous. But the point about the 1977 statute is that a Federal judge enjoined enforcement of parts of that statute. And that's the portion that's overlooked in the State's argument. But how did that affect Jenkins? That affected Mr. Jenkins, Your Honor, because the 1977 statute allowed the poll board to decide not to allow for parole at all or to defer parole based on a number of grounds. For example, a defendant who's convicted of a particularly violent crime or a defendant who's convicted of certain types of felonies or a defendant who has a severe emotional disturbance could be denied a parole date or the parole date could be postponed. That's what happened to Mr. Jenkins. Counsel, it looks to me, and correct my impression if I'm wrong about this, it looks to me like the new system makes it harder to postpone release for someone rather than easier to postpone release. So isn't the system as a whole more favorable to inmates than the previous one? And if it's more favorable, why would it be an ex post facto violation? Well, that's clearly the State's argument, Your Honor, that it's more favorable. Well, but why isn't it? Not looking at him, but looking at the structure of the statutory and regulatory scheme. Well, when you're asking is it more favorable or less favorable, you have to ask what you're comparing to. In this case, we're comparing the 1981 statute that was applied to Mr. Jenkins to the 1977 statute as enjoined by the Federal judge because the Federal judge said that they could not rely on certain portions of that statute. So Mr. Jenkins is entitled to that application of that injunction when decided in case. But the 77 law was still in effect at the time of his crime, correct? Correct. He doesn't even allege that he would have had an earlier parole date, does he? He alleges that he would be released at the parole release date that was given by the parole board if they had applied the 1977 statute with a judicial gloss by Judge Solomon rather than applying the 1981 statute. If they had applied the 1977 statute as it had been enjoined, they could only have deferred his parole release date on the two bases remaining in the statute. He was serving a fairly long sentence. He wouldn't even be considered to parole in 1977, would he? Not in 1977, Your Honor. He's entitled to have a parole release hearing every certain number of years. And at that parole release hearing, he's entitled to have the statute applied to him that was in effect at the time of his crimes. And that was the 77 statute with no modification. That was at the time of the crime without any judicial gloss or anything. That's correct. But when a judge has said that that 1977 statute is unconstitutional or violates Federal law, we can't apply that 77 statute anymore to Mr. Jenkins. We have to apply the 77 statute with the judicial gloss that's been added to it. That's the essence of his argument, that he was entitled to have that statute applied as the Federal judge ordered it. The judge ordered that certain portions of the statute not be invoked when deciding to defer release. And what the parole board said is, well, we're going to apply a later statute. We're going to apply the 1981 statute because we can't apply that 77 statute to you. Well, if the court holds that a statute has some unconstitutional effects in it, why can't the legislature pass a new statute? And then that would apply when the petitioner's parole comes up. This fellow wasn't going to come up for quite a while. In his history, he wasn't going to get a new statute for what, for several years? Well, clearly, Your Honor, the courts could do this. The legislature could do exactly that. If a Federal judge says that the statute is written, certain portions can't be enforced, the legislature can pass a new statute, and they can add new sections to it. But the law is clear that that new statute, to apply it to somebody whose crimes were committed before that statute was amended, would violate the ex post facto clause. And that's clear in many of the living liberties. Let's assume that Judge Salamone had struck down the entire parole statute, and then the legislature passed a new one. Would you say that statute didn't apply at all to your client? Your Honor, I think that would be a more difficult question if they had struck it down entirely. That possibly the Supreme Court's case of Dawbert would be somewhat relevant there where they had struck down a death penalty statute. But that's not what happened in this case. In this case, the judge only enjoined enforcement of certain parts of the statute. And there were parts remaining which could be applied to Petitioners or Parolees like Mr. Jenkins. For example, if he had committed misconduct while in custody or if his release plan was not valid, these are under the same section of the statute, 144.125. His parole release date could have been deferred. But the Board didn't use the remaining part of the statute that existed at the time of his offense to decide his parole release date. Instead, they applied a later statute. And under that later statute, they continued to rely on the existence of a severe emotional disturbance, which was exactly what had been enjoined from the 1977 statute. I think the State's argument is that the judge's injunction didn't really mean what it seems to say. What the State argued in its briefing and what the magistrate judge found was that if you look at the judge's written opinion, the written opinion seemed to allow for reliance on severe emotional disturbance if that causes a danger to the community. But that was the point of having struck part of the original statute, wasn't it, that it allowed people's parole release dates to be postponed if they had severe emotional disturbance, even in the absence of a showing that it created a danger to the community, et cetera. And so why isn't the legislature's acceptance of that amendment really just all of a piece with the judge's original decision? Well, it depends on how you define the judge's decision. The judge's written opinion refers to factors like danger to the community as something that the legislature might want to consider and that the parole board might want to consider. But the final judgment that was issued in the case as an injunction is unambiguous and clear and says the parole board is enjoined from applying that statute on the basis of severe emotional disturbance. Well, that was a civil case in which the question was whether a category of prisoners could be denied a parole period because of their emotional. Some of them, I remember sort of vaguely, I remember the case. A lot of people were pleading not guilty by reason of insanity on various crimes and were being either held in a prison or in a criminal insane ward in a state hospital. And they were not given the consideration of parole because they were considered emotionally unfit to be out running around on the street. And Judge Solomon said, well, you can't just categorically deny everybody that's got an emotional problem a chance to have a parole consideration. So the legislature passes a new law and says if there are these considerations, they will be taken care of in a different way. But that didn't grant or create any right to a parole or a fixed date of release or anything in the best of the interest of anybody who would have to have a parole. It was a civil case. In the first place, in the second place, the legislature cured whatever the defect was perceived to be in that statute. And our argument is not that the injunction created any right to parole. The right to have a parole release date was given to Mr. Jenkins when the State Parole Board gave him a parole release date. And the case law is clear, and I cited it in my brief, that when a parole release date is given to a parolee or an inmate, that creates a liberty interest that they have a right to be paroled on that date or have a hearing to determine why not. And what the Oregon Board of Parole does is they bring somebody up for consideration for parole. If they deny them for some of the reasons in the statute, then they give them a new date, and the person continues to try to get paroled. In Mr. Jenkins' case, he was given a parole release date, and he had a liberty interest in that date. He went for a hearing. Sotomayor, I thought he was given a hearing, too. Was he not given a hearing? A proper hearing? He was given a hearing on that. And at the hearing, the court applied the 1981 statute, which allowed them to rely on a severe emotional disturbance that causes a danger to the community. And his argument is that Judge Solomon's injunction, which said he cannot rely on a severe emotional disturbance, should govern in his case because his crime was committed before that 1981 amendment. For later inmates, clearly, for someone who's committed a crime after 1981, clearly the new statute applies, and under the law, they won't have any ex post facto argument. But this Court's decisions in cases like Himes and Brown v. Palmatier and others recognize that when a new condition is added as a reason for denying parole, that violates the ex post facto clause if it disadvantages the Petitioner. In this case, Mr. Jenkins was disadvantaged because the judge could not – the parole board could not rely on a severe emotional defect given Judge Solomon's order. Your Honor. You want to see? You've got a minute. Well, no, you're a minute over, but we'll give you a minute or two. Thank you. Anyway, thank you. Is that – go ahead. May it please the Court, Caroline Alexander for respondent.  There was no provision for holding people with these emotional disturbances. And therefore, that the provision itself, even though it's much better, is like treated like a new added provision. What's your response to that? My response to that, Your Honor, is that that's not what the Federal District Court in Daniels did. What the District Court's order in Daniels said was defendants and their successors are enjoined from enforcing and applying ORS 144.125 sub 3 to deny or postpone parole on the basis of severe emotional disturbance. Then in the opinion, what the District Court said was if after consideration of all relevant facts, including a psychiatric or psychological report, the board determines that the prisoner will be a danger to the health or safety of the community, it may deny or postpone parole. So what the Daniels Court did was not invalidate the entire statute, but say, no, board, you cannot postpone or defer parole on the sole basis of severe emotional disturbance. So essentially, your view is that the Daniels Court wrote the same statute as is now in existence, in essence. That's exactly what happened, Your Honor. Which is better than the statute on the books at the time the defendant committed the crime. Exactly, Your Honor. It's more favorable to people in general because it requires not only a showing of their mental problem, but also of its nexus to a danger. Exactly, Your Honor. If the judge had put into his order, you may not enjoin, I mean, you may not act on this provision unless, and then added the language from the opinion, I suspect there wouldn't have been any problem. So I guess the question seems to be, and maybe this should be addressed to your opponent, seems to be whether you read into the order the part of the opinion that explains it. That's correct, Your Honor. And I draw the Court's attention to two subsequent opinions. The first one is McLean v. Board of Parole, and that was in my 28J letter in response to the Court's order last week. And in McLean, just two months ago, the Oregon Court of Appeals looked at exactly that issue and interpreted the injunction in Daniels and addressed the issue the Court raises here, is whether we look solely at the order and what that means, and do we look at the opinion. And the Oregon Court of Appeals found in McLean that, in fact, the 1981 statute did not defy the injunction in Daniels, that when read together, in fact, it meant not on the sole basis of emotional disturbance, but if the board also finds danger, then that's sufficient. Now, whether a State court's interpretation of the Federal injunction is binding on this Court, that's an open question. It's still an interpretation of State law. But in McLean, the Court of Appeals went on to say, in addition, under Oregon law, the board had the discretion and had the authority in 1977, under that version of the statute, if it found danger in addition to severe emotional disturbance, that it could, in fact, postpone or defer parole. The second thing, I think, subsequently to look at is that in 2000, the Federal courts revisited this whole Daniels issue again. And Judge Hagerty, looking at what Judge Solomon did in the original Daniels, looked at that order and opinion together and said, yes, that's exactly right. If the board finds danger in addition to severe emotional disturbance, the board can defer parole. That 2000 case went to this Court, in which Petitioner here in this case, trying to join that litigation, this Court, in an unpublished opinion, said, no, Judge Hagerty is right, that's what Daniels meant in the first place. So this is an argument that's been rejected by the Oregon Court of Appeals and by this Court. I think Judge Graber is absolutely right. What the legislature did after the Daniels injunction was issued is to look at that, formalize that opinion and order, and say, yes, the board must also make a finding of dangerous, which makes it, I think it could be read both ways. It's either more favorable to prisoners because the board has to make an additional finding of dangerousness, which makes it harder to defer parole, or at the very least, they're equivalent. The 1981 statute is now equivalent to the 1977 statute as interpreted by Daniels. Any further questions? Thank you. All right. Would you like a minute or two? Thank you, Your Honor, if I could. I wanted to respond to the arguments of counsel there. We don't have any quarrel that the legislature in 1981 could enact a statute it did. That was perfectly reasonable. The question is whether they could apply that statute retroactively to Mr. Jenkins. I'll make sure that was clear. The two cases cited by counsel, first the McCline case was decided in April of 2006 after both of us filed our briefs in this case, which is why it's not mentioned in those briefs. The Court of Appeals in that case found that Judge Solomon's judgment was ambiguous because the Petitioner and the State interpreted it differently. And therefore, the State court said, well, then we'll go look to the written opinion to interpret this ambiguous judgment. But with respect, if that's the standard for determining that a judgment is ambiguous, then every judgment, every statute would be considered ambiguous because, of course, litigants on both sides interpret it differently. Judge Solomon's injunction is not ambiguous. It says explicitly that the Board may not apply or enforce those sections based on severe emotional disturbance. And it's a logical decision. There's other – there are other parts of that statute that still exist even if you take out severe emotional disturbance. So if the State felt the judgment was broader than the written opinion allowed, then the State should have filed a motion under Rule 59 of the Civil Rules to clarify the judgment, or it should have appealed it. Imagine if a Federal judge issued an injunction against a law that penalized doctors for performing certain types of abortions, and the State felt the injunction was too broad given the written opinion. They can't simply ignore the injunction. They would have to ask another court to review that injunction. Judge Solomon's injunction has been in existence since 1979. Clearly, many people have differed in the interpretations of it. And as the State argues, Judge Hagerty, in a different case, ruled that Judge Solomon's opinion could be interpreted the way the State has. But that's a district court opinion. It wasn't reviewed in a published opinion by this Court. And the Petitioner in this case asserts that that injunction applies to him, that you can't simply read the written opinion to inform the injunction when the injunction was clear. And his parole release date should have been reviewed under the 1977 statute as – as amended by that injunction. Your Honor, I had one other issue in my brief that I did raise briefly, and simply that even if you weren't to consider the injunction, the 1981 statute still is not favorable to the defendant. And that is, even though the State added the condition that the defendant must be considered a danger, by adding that condition, the State changed the focus of the Board of Parole's decision-making. And for that reason, additional reason, Your Honor, I would ask the Court to remand this so that Mr. Jenkins can be reviewed under the appropriate statute. Thank you, Your Honor. Thank you, counsel. The case just argued will be submitted. The final case for argument in the morning is pretty on top.
judges: Goodwin, Reinhardt, Graber